# In the United States Court of Federal Claims

No. 16-620C
(Filed: June, 21 2018)

| | |
|---|---|
| COUTURE HOTEL CORPORATE,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | RCFC 12(b)(1), lack of subject matter jurisdiction; RCFC 12(b)(6), failure to state a claim upon which relief can be granted; Pre-Award Bid Protest; Bid Preparation and Proposal Costs; Breach of Implied-in-Fact Contract |

*Jeremy D. Camp*, Dallas, TX, for plaintiff. *Michael S. Gardner* and *Eric P. Haas*, Dallas, TX, of counsel.

*Eric J. Singley*, Civil Division, U.S. Department of Justice, Washington, D.C., with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.,* Director, and *Douglas K. Mickle*, Assistant Director, for defendant. *Chris S. Cole*, Trial Attorney, USAF Commercial Law & Litigation Directorate, Joint Base Andrews, MD, of counsel.

**O P I N I O N**

**FIRESTONE**, *Senior Judge*

Pending before the court is the motion filed by the United States ("the government") to dismiss this action filed by Couture Hotel Corporation a/k/a Hugh Black-St Mary Enterprises, Inc. ("plaintiff") under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. In its complaint, plaintiff alleges that in 2011 it purchased and renovated a hotel

near Nellis Air Force Base ("Nellis AFB"), which is located in Las Vegas, Nevada, in order to participate in the off-base lodging business for visitors to the base when on-base Nellis Lodging[1] is not able to accommodate all visitors. Am. Compl. ¶¶ 1–3 at 1–3. According to plaintiff, it "understood and expected" that if its hotel met Nellis AFB's requirements for off-base lodging and passed an inspection, Nellis Lodging would enter into a Memorandum of Understanding ("MOU")[2] with plaintiff, "enabling [plaintiff] to compete with other hotels for off-base lodging business for Nellis AFB." Id. ¶ 18 at 7. Plaintiff alleges that in order to secure the MOU for the off-base lodging business, it "purchased the Hotel [in question] for $9,534,151.96" and "made modifications to the Hotel property in order to comply with the Nellis AFB requirements . . . expending $1,238,848.72." Id. ¶ 21 at 8. After renovating the hotel to meet Nellis AFB's requirements, plaintiff contends that Nellis Lodging refused to enter into an MOU, claiming that Nellis AFB "was 'not adding any new facilities to [its] MOU listing at [that] time.'" Id. ¶ 3 at 3.

Plaintiff states that Nellis Lodging's refusal to enter into an MOU gives rise to two claims. First, plaintiff asserts that Nellis Lodging failed to "conduct appropriate

---

[1] Nellis Lodging is a non-appropriated fund instrumentality ("NAFI"). The United States Supreme Court has described a NAFI as an entity "which does not receive its monies by congressional appropriation." *United States v. Hopkins*, 427 U.S. 123, 125 n.2 (1976). This court has jurisdiction over claims brought against NAFIs. *Slattery v. United States*, 635 F.3d 1298, 1321 (Fed. Cir. 2011).

[2] The MOU in question was authorized by Air Force Instruction ("AFI") 34-246, "Air Force Lodging Program," dated October 29, 2008, according to which, "Air Force lodging operations, using [an MOU would] attempt to negotiate reduced rates for [commercial lodging] accommodations in order to provide eligible guests alternative lodging *when adequate on-base lodging is not available*." AFI 34-246 ¶ 1.14 at 10 (emphasis added). Importantly, AFI 34-246 stated that "[i]f no space [was] available on base [temporary duty] travelers ha[d] the option to accept a non availability number and find their own hotel." *Id.* Most such travelers, however, were expected to accept the assistance offered by Air Force lodging operations "by going to one of [their] available [commercial lodging facilities.]" *Id.*

competitive procedures to procure . . . off-base lodging services" and further violated those procedures when it "preclude[d] [plaintiff] from competing for those services." *Id.* ¶ 2 at 2. Plaintiff asserts that by using an MOU process and then failing to provide plaintiff with the opportunity to enter into an MOU to compete for off-base services, the government violated the requirements of the Competition in Contracting Act ("CICA"),[3] 10 U.S.C. § 2304, and various associated procurement regulations. *Id.* ¶¶ 37–38 at 13–14. Plaintiff claims that in this litigation it is seeking the following as bid preparation and proposal costs: (a) $2,732,836.43 which covers the cost of purchasing the hotel less the amount plaintiff received from the subsequent sale of the hotel and (b) $1,238,848.72 for the costs plaintiff incurred in modifying the property to meet the MOU requirements. *Id.* ¶ 51 at 18–19.

Second, plaintiff asserts, in the alternative, that Nellis Lodging's refusal to enter into an MOU resulted in a breach of an implied-in-fact contract between plaintiff and Nellis Lodging. *Id.* ¶¶ 53–57 at 19–20. Plaintiff alleges it "moved forward with the purchase and renovation of the Hotel . . . in furtherance of satisfying the Nellis AFB requirements needed to obtain the MOU." *Id.* ¶ 54 at 20. Plaintiff contends that Nellis Lodging breached the implied-in-fact contract when it refused to add plaintiff's hotel to

---

[3] CICA was passed into law in 1984 and set out a general requirement that executive agencies "obtain full and open competition through the use of competitive procedures" when "conducting a procurement for property or services." Pub.L. No. 98–369, § 2711, 98 Stat. 494, 1175 (1984). CICA originally did not include a definition of "procurement," but in 2011 Congress amended the Act to define the term. An Act to Enact Certain Laws Relating to Public Contracts as Title 41, United States Code, "Public Contracts," Pub.L. No. 111–350, sec. 3, 41 U.S.C. § 111, 124 Stat. 3677, 3681 (2011). CICA now defines "procurement" as "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." 41 U.S.C. § 111.

its MOU listing for reasons not related to plaintiff's failure to meet the criteria for an MOU, but because of Nellis AFB's "'budgetary climate.'" *Id.* ¶ 56 at 20. Plaintiff seeks the same damages it seeks for bid preparation and proposal costs for breach of the implied-in-fact contract. *Id.* ¶ 57 at 20.

The government, in its motion to dismiss, argues first that plaintiff's claims for the above-stated bid preparation and proposal costs must be dismissed for lack of subject matter jurisdiction. Def.'s Mot. to Dismiss at 13–15; Def.'s Reply in Supp. of Mot. to Dismiss at 7–10. The government argues that plaintiff's CICA and associated claims are barred under the Federal Circuit's holding in *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), because the plaintiff failed to timely object to the MOU process employed by Nellis Lodging to secure off-base accommodations. Def.'s Mot. to Dismiss at 14. According to the government, plaintiff needed to object to the MOU process before it sought to comply with the MOU by buying and renovating a hotel. *Id.* at 15. The government argues that under *Blue & Gold* and its progeny, plaintiff's objections to Nellis Lodging's use and implementation of the MOU process were therefore waived. *Id.* at 13–15. The government further contends that the costs plaintiff incurred to meet the MOU requirements are not recoverable as bid preparation costs in any case. *Id.* at 11. According to the government, "'[c]osts incurred in anticipation of'" entering into a government contract are not "'recoverable bid preparation expenses.'" *Id.* (quoting *Lion Raisins, Inc. v. United States*, 52 Fed. Cl. 629, 631 (2002) (citing *Coflexip & Servs., Inc. v. United States*, 961 F.2d 951, 953 (Fed. Cir. 1992)) (other citations omitted)).

Finally, the government argues that plaintiff's alternative claim for breach of an implied-in-fact contract must be dismissed for failure to state a claim. *Id.* at 18–19. The government contends that a careful review of the amended complaint demonstrates that plaintiff has not alleged the facts necessary to establish an implied-in-fact contract. *Id.* To prove the existence of an implied-in-fact contract with the United States, a plaintiff must show "(1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance[;] and (4) 'actual authority' on the part of the government's representative to bind the government." *Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc) (citing *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998)); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). The government argues that plaintiff has not alleged facts to meet the elements of mutuality of intent to contract, consideration, and lack of ambiguity in offer and acceptance. Def.'s Mot. to Dismiss at 18. Moreover, the government maintains that commitments made to plaintiff were not made by a person with actual binding authority. *Id.* In this connection, the government argues that plaintiff's amended complaint is best read as stating a claim for breach of an implied-in-law contract based on principles of promissory estoppel. *Id.* at 5–8. The government maintains that this court does not have jurisdiction over implied-in-law contract claims. *Id. See, e.g.*, *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996).[4]

---

[4] At oral argument, plaintiff conceded that this court does not have jurisdiction over implied-in-law contracts but argued that the factual allegations made in the amended complaint also give rise to a breach of an implied-in-fact contract claim. *See* Oral Argument at 11:32:00 a.m.–11:32:38 a.m. (May 15, 2018).

For the reasons set forth below, the court finds that plaintiff's bid protest claims regarding Nellis Lodging's use and implementation of the MOU process must be dismissed for lack of subject matter jurisdiction and that plaintiff's costs in buying and renovating the hotel are not recoverable bid preparation costs in any case. Second, the court finds that plaintiff has failed to state a claim for breach of an implied-in-fact contract. Accordingly, the government's motion to dismiss is **GRANTED.**

# I. Background Facts[5]

Nellis AFB is one of the largest Air Force bases in the world, where training is conducted together with air and ground units of the Army, Navy, Marine Corps, and Air forces from allied nations, and frequently hosts a substantial number of military servicemen and officers, along with their families. Am. Compl. ¶ 1 at 1.

To accommodate the large numbers of members of the United States military and other visitors, Nellis AFB provides temporary on-base lodging via Nellis Lodging, the Nellis AFB office responsible for providing on- and off-base lodging. *Id.* at 1–2. However, the demand often exceeds the capacity for on-base lodging. *Id.* at 2. As a result, Nellis Lodging has entered into agreements with Las Vegas area hotels for off-base lodging. *Id.*

In 2011, plaintiff "began exploring an opportunity to acquire the Hotel [in question], which was located in close proximity to Nellis AFB[,]" because plaintiff "believed that, under [plaintiff's] ownership and management, the Hotel would be

---

[5] The following jurisdictional facts are taken from plaintiff's amended complaint filed July 25, 2016 (ECF No. 9).

uniquely positioned to provide Nellis AFB with off base lodging at the best location, best price, and with the best services." *Id.* ¶ 13 at 5.  Accordingly, plaintiff contacted Nellis Lodging to "inquire about the opportunity to provide lodging services to Nellis AFB and the procurement process required in order to do so." *Id.* at 5–6.

In July and August 2011, plaintiff's representatives met with Cathy Fierstein, Lodging General Manager of Nellis Lodging, about plaintiff's "interest in competing for off-base lodging business." *Id.* ¶ 14 at 6.  Plaintiff "was surprised to learn that Nellis AFB did not utilize standard competitive procedures to solicit and award the lodging business such as an invitation to bid or request for proposal process." *Id.*  Ms. Fierstein explained that "Nellis AFB awarded off-base lodging business to hotels that met certain requirements and, after passing an inspection, signed [an MOU] with Nellis AFB[,]" which she claimed was justified because of the "tight lodging market in previous years." *Id.*  Ms. Fierstein also explained that the hotel plaintiff wished to purchase "was not, at that time, eligible to compete for the lodging business under the MOU procurement process because it did not meet certain requirements mandated by Nellis AFB." *Id.* ¶ 15 at 6.  Ms. Fierstein told plaintiff that the hotel needed to be renovated to meet the MOU requirements "and, if it did so, it would then receive an MOU." *Id.*

Following that meeting, plaintiff "requested a copy of the MOU which contained Nellis AFB's requirements[,]" which it received on August 29, 2011. *Id.* at 6–7.  The sample MOU stated that it "serve[d] 'to establish a rate for government travellers on an as needed basis when lodging on base [was] fully occupied.'  In furtherance of that objective, the MOU provide[d] that the commercial hotel signatory '[would] furnish

7

lodging accommodations for Nellis AFB, Nevada on a rental basis'—at agreed rental rates to be specified in the MOU—and set[] forth '[t]he performance standards and requirements for these services.'" *Id.* ¶ 16 at 7. The sample MOU also provided that "a hotel [would] not be approved for an MOU unless and until it [met] certain requirements and passe[d] [the relevant] inspection[.]" *Id.* ¶ 17 at 7.

To take part in the "off-base lodging procurement process, [plaintiff] was required to purchase the Hotel [in question], make the necessary changes (physically and operationally) to comply with the MOU requirements, and have the property pass inspection." *Id.* ¶ 18 at 7. Based on its discussions with Ms. Fierstein, plaintiff "understood and expected that the Hotel would receive an MOU—enabling it to compete with other hotels for off-base lodging business for Nellis AFB—once it met the requirements mandated by the Government." *Id.* "Given Nellis AFB's requirement that any hotels desirous of providing off-base lodging follow the MOU process, and [plaintiff's] understanding that it would receive an MOU if it complied with the requirements specified by Nellis AFB, plaintiff undertook the activities necessary to prepare to compete for the lodging business." *Id.* ¶ 20 at 8. Plaintiff therefore purchased the hotel it had identified to Ms. Fierstein for $9,534,151.96 and made the necessary renovations to meet the MOU's requirements at a cost of $1,238,848.72. *Id.* ¶ 21 at 8. Plaintiff "would not have incurred those costs but for the necessity that it do so in order to participate in the MOU procurement process utilized by Nellis AFB and obtain the MOU purportedly necessary to obtain lodging business from Nellis AFB." *Id.*

8

When plaintiff completed the renovations to the hotel in 2012, plaintiff sent an e-mail to Ms. Fierstein requesting a time and date for the inspection required under the MOU. *Id.* ¶ 22 at 8–9. Ms. Fierstein wrote back to plaintiff in an e-mail, in which she stated that Nellis Lodging was "not adding any new facilities to [its] MOU listing at [that] time." *Id.* ¶ 23 at 9. According to Ms. Fierstein, "'[t]he amount of business [Nellis Lodging] sen[t] off base d[id] not warrant the need for additional off base MOU's [sic] at [that] time,' and that '[u]nless the budgetary climate for the military improve[d] greatly in the near future, [she] d[id] not believe that [Nellis Lodging could] anticipate needing to add to [its] listing for the next year or two.'" *Id.*

As a result of plaintiff's surprise by "Nellis AFB's reversal of course on the MOU procurement process and its apparent refusal to allow [plaintiff] to participate in open competition for the lodging business, plaintiff requested "a formal administrative hearing regarding the Nellis AFB lodging procurement." *Id.* ¶ 25 at 9. Nellis Lodging's response to plaintiff's request for a formal hearing was that "there [was] no requirement or mechanism to accommodate [its] request [for a hearing] because there ha[d] been no contract action on which to base [its] request[,]" maintaining that "'there [was] not a contract in place by which' the Nellis AFB lodging facility referred personnel to off-base hotels and, therefore, 'there [was] not a competition requirement.'" *Id.* ¶ 26 at 9.

Ultimately, plaintiff had to file for bankruptcy because of the loss of "the anticipated revenue from Nellis AFB business," and because it was "saddled with the additional costs and operating expenses imposed by compl[ying] with the MOU requirements[.]" *Id.* ¶ 30 at 10–11. The hotel "was placed into receivership" and "was

9

sold at a loss for $6,801,315.53 in order to mitigate [plaintiff's] losses resulting from Nellis AFB's refusal to follow the procurement process it had required or to even open up the off-base lodging business to competition." *Id.* at 11.

Plaintiff filed the present action on May 25, 2016, and its amended complaint on July 25, 2016, seeking compensation for the purchase of the hotel and the relevant renovations it undertook to meet the MOU requirements, asserting claims under the court's bid protest jurisdiction and contract jurisdiction. As also noted above, the government moved to dismiss the action on September 15, 2016.

Briefing on the government's motion was completed on March 28, 2018. Oral argument was held on May 15, 2018.

## II. Standard of Review

Similar to a motion to dismiss pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted, when considering a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), "the court must accept as true all undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor." *Westlands Water Dist. v. United States*, 109 Fed. Cl. 177, 190 (2013) (cases cited therein). "If a motion to dismiss for lack of subject matter jurisdiction . . . challenges the truth of the jurisdictional facts alleged in the complaint, the . . . court may consider relevant evidence in order to resolve the factual dispute." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)). When assessing a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(6), "unchallenged

allegations of the complaint should be construed favorably to the pleader." *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III. Discussion

#### A. Plaintiff's Bid Protest Claim is Barred by *Blue & Gold* and its progeny

In the instant case, plaintiff argues that the government failed to comply with the provisions of the Competition in Contracting Act ("CICA") and implementing regulations by using MOUs to secure off-base lodging instead of "the authorized competitive procedures[.]" Am. Compl. ¶ 38 at 13. Specifically, plaintiff argues that the government's violation of CICA provisions was in connection with the procurement or proposed procurement of off-base lodging services from plaintiff. *Id.* ¶¶ 37–38 at 13–14. As such, plaintiff argues that the government's decision not to grant plaintiff an MOU to compete for "off-base lodging business . . . was arbitrary, capricious, and not in accordance with law." *Id.* ¶ 8 at 4.

The government argues that plaintiff's bid protest must be dismissed because its bid protest claim is barred by the Federal Circuit's decision in *Blue & Gold* and its progeny. In *Blue & Gold,* the Federal Circuit held that if an offeror who had the opportunity to timely object to an obvious error in the terms of a solicitation, but failed to do so, has waived the right to challenge that same error in a subsequent bid protest. *Blue & Gold*, 492 F.3d at 1313. In *COMINT Systems Corp. v. United States*, the Federal Circuit extended *Blue & Gold* to apply to all pre-award situations where the protesting party had the opportunity to challenge aspects of a solicitation before the award but failed

to do so. 700 F.3d 1377, 1378 (Fed. Cir. 2012). Requiring a party to protest errors or ambiguities in a solicitation before award—or else waive the right to do so—rests on the policy that a party should not be allowed to "wait and see" if it has received the contract award before challenging the terms of the solicitation. *Id.* at 1383 (citing *Blue & Gold*, 492 F.3d at 1314). The court in *COMINT Systems* reasoned that the policy behind *Blue & Gold* supported its extension to all pre-award situations where the party has the time and opportunity to raise its objections. *Id.* at 1382. In this case, the government argues that because plaintiff knew that Nellis Lodging used an MOU process and thus had the opportunity to challenge Nellis Lodging's MOU process before incurring the costs of acquiring and renovating a hotel, plaintiff has waived its objection to Nellis Lodging's use and implementation of an MOU process to secure off-base accommodations. Def.'s Mot. to Dismiss at 13–15.

In response to the government, plaintiff claims that the waiver rule established in *Blue & Gold* is not applicable because, unlike the plaintiff in *Blue & Gold*, the plaintiff in this case was not responding to a solicitation. Pl.'s Resp. to Def.'s Mot. to Dismiss at 12. Rather, plaintiff objects to the process selected and the manner in which it was implemented. *Id.* at 12–14. Additionally, plaintiff maintains that *Blue & Gold* is inapplicable because "[p]laintiff is not seeking to enjoin the award of a contract or to reverse a contract award and restart the bidding process." *Id.* at 13.

The court finds that plaintiff's arguments are without merit and that, as the government argues, plaintiff's bid protest claim must be dismissed under the waiver rule established in *Blue & Gold*. Under *Blue & Gold*, a plaintiff that "has the opportunity to

12

object to the terms of a government solicitation containing a patent error and fails to do so . . . waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Blue & Gold*, 492 F.3d at 1313.  A patent error is "an obvious omission, inconsistency or discrepancy of significance[.]" *E.L. Hamm & Assocs. v. England*, 379 F.3d 1334, 1339 (Fed. Cir. 2004).  In determining whether a patent error exists, "the court must consider both what a reasonable offeror in the industry would know and even, to an extent, the offeror's particular business acumen." *Jay Cashman, Inc. v. United States*, 88 Fed. Cl. 297, 309 (2009) (citing *Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1305–06 (Fed. Cir. 1996); *Helix Elec., Inc. v. United States*, 68 Fed. Cl. 571, 585 (2005)).  Further, parties in a government contract action "'are charged with knowledge of law and fact appropriate to the subject matter[.]'" *Res. Conservation Grp., LLC v. United States*, 96 Fed. Cl. 457, 466 (2011) (quoting *Turner Constr. Co., Inc. v. United States*, 367 F.3d 1319, 1321 (Fed. Cir. 2004), *aff'd sub nom. Res. Conversation Grp., LLC v. United States*, 432 F. App'x 975 (Fed. Cir. 2011)).

Here, plaintiff knew of the government's procurement procedure early on during its discussions with Ms. Fierstein.  Am. Compl. ¶ 14 at 6 ("Couture was surprised to learn that Nellis AFB did not utilize standard competitive procedures to solicit and award the lodging business such as an invitation to bid or request for proposal process.").  Indeed, plaintiff has conceded that it was aware of the grounds for protest it now asserts before it decided to acquire and renovate the hotel in question.  *Id.* ¶¶ 14–15 at 6–7.  In such circumstance, plaintiff had ample opportunity to challenge Nellis Lodging's MOU process and to clarify what rights it would have under that process.  By waiting until after

Ms. Fierstein informed plaintiff that Nellis Lodging would not be entering into any new MOUs, plaintiff waived its right to object to both the process and its implementation.

Plaintiff's argument that *Blue & Gold* is inapplicable because Nellis Lodging did not issue a solicitation and because plaintiff is not seeking to set aside a contract is without merit. The Federal Circuit made clear in *COMINT Systems* that an offeror waives all pre-award objections to all claims associated with an acquisition process by not making a timely challenge. *COMINT Systems*, 700 F.3d at 1382–83. Where, as here, plaintiff argues that the MOU process was unlawful, it does not matter that Nellis Lodging had not issued a solicitation or that plaintiff is not seeking to set aside a contract award because the pre-award process encompasses the government's selection of an acquisition process. *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008) (noting that because the term "'in connection with a procurement or proposed procurement[]' by definition involves a connection with any stage of the federal contracting acquisition process, including 'the process for determining a need for property or services[,]' [t]o establish jurisdiction . . . [an offeror] must demonstrate that the government at least initiated a procurement, or initiated 'the process for determining a need' for acquisition" of goods or services). The court must therefore dismiss plaintiff's bid protest claim for lack of subject matter jurisdiction.

Second, the court also agrees with the government that to the extent plaintiff's bid protest claim challenging Nellis Lodging's refusal to enter into an MOU with plaintiff is not barred, plaintiff is not entitled to the costs it seeks in any event under this court's bid protest jurisdiction. Under 28 U.S.C. § 1491(b)(2), this court is authorized to issue two

14

forms of relief under its bid protest jurisdiction, an injunction and "bid preparation costs." 28 U.S.C. § 1491(b)(2).  The costs plaintiff incurred in acquiring and renovating the hotel are not bid preparation costs.  Plaintiff alleges that the costs it incurred and seeks to recover were necessary because the MOU was a "mandated step" in order to participate in Nellis Lodging's procurement process for off-base lodging services, and thus the costs plaintiff incurred were necessarily bid preparation and proposal costs.  *See* Am. Compl. ¶ 51 at 18–19; *see also* Pl.'s Resp. to Def.'s Mot. to Dismiss at 9–11.

It is well settled that bid preparation costs are the costs incurred to prepare a bid and not those incurred in anticipation of receiving the contract.  Section 31.205–18 of the Federal Acquisition Regulation states that "[b]id and proposal (B & P) costs means the costs incurred in preparing, submitting, and supporting bids and proposals (whether or not solicited) on potential Government or non-Government contracts."  48 C.F.R. § 31.205–18(a).  In this connection, "[e]xpenses compensable as bid preparation costs are those in the nature of researching specifications, reviewing bid forms, examining cost factors, and preparing draft and actual bids[,]" not those from purchasing and renovating hotels.  *Lion Raisins*, 52 Fed. Cl. at 631 (citing *Finley v. United States*, 31 Fed. Cl. 704, 707 (1994); *Power Sys.-Claim for Costs*, B–210032; B–210032.2, 84–1 CPD ¶ 344, 1984 WL 44014, at *1 (Comp. Gen. March 26, 1984) ("[C]osts are limited only to those expenses incurred in the preparation of the bid itself.")).  In such circumstances, "[c]osts incurred in anticipation of or to qualify for a contract award[,]" like in this case, "are not recoverable bid preparation expenses."  *Id.* (citing *Coflexip*, 961 F.2d at 953; *Stocker & Yale, Inc.*, B–242568, 93–1 CPD ¶ 387, 1993 WL 181158, at *3 (Comp. Gen. May 18,

15

1993)) ("Offerors may incur substantial costs in anticipation of, or in the course of, competing for a contract, without those costs thereby becoming proposal preparation costs."). Thus, plaintiff's costs of purchasing and renovating the hotel in question are in the nature of damages and would not be recoverable under this court's bid protest jurisdiction as bid preparation and proposal costs even if the court had jurisdiction over plaintiff's bid protest claim.

### B. Plaintiff's Implied-in-Fact Contract Claim Must Be Dismissed for Failure to State a Claim

This court has jurisdiction to hear claims based either on an express or an implied-in-fact contract. *Hercules*, 516 U.S. at 423. A plaintiff's allegation that such a contract exists between itself and the United States "is enough to confer subject matter jurisdiction in this [c]ourt." *Penn. Dep't of Pub. Welfare v. United States*, 48 Fed. Cl. 785, 786 (2001) (citing *Trauma Serv.*, 104 F.3d at 1324). However, if a plaintiff fails to allege facts sufficient to establish an implied-in-fact contract, its case may be dismissed for failure to state a claim. *See, e.g.*, *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1434 (Fed. Cir. 1998); *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003) (noting that plaintiff has the burden of establishing an implied-in-fact contract); *AAA Pharmacy, Inc. v. United States*, 108 Fed. Cl. 321, 328–29 (2012) (granting the government's motion to dismiss because plaintiff failed to allege the necessary elements showing a valid contract with the government).

In its motion to dismiss, the government maintains that plaintiff has failed to state a claim because plaintiff has failed to allege sufficient facts to establish an implied-in-fact

16

contract with the United States. Def.'s Mot. to Dismiss at 18. Specifically, the government argues that plaintiff has not alleged sufficient facts to demonstrate a mutuality of intent and an unambiguous offer and acceptance, claiming that Nellis Lodging's response to plaintiff's interest in entering into an MOU was "mere interest," which "does not establish a mutual intent to contract, or an unambiguous offer and acceptance." *Id.* at 19 (quoting *Pac. Gas & Elec. Co. v. United States*, 3 Cl. Ct. 329, 339 (1983)). Further, the government alleges that Ms. Fierstein, the Nellis Lodging manager with whom plaintiff communicated, did not have contracting authority to bind the government. *Id.* at 18.

In response, plaintiff asserts that the parties' intent to contract can be inferred from the parties' conduct. Pl.'s Resp. to Def.'s Mot. to Dismiss at 17. Specifically, plaintiff argues that Ms. Fierstein's "representations and promises that [plaintiff] would receive an MOU[,]" together with the sample MOU given to plaintiff that "specif[ied] the requirements that [plaintiff] needed to meet," demonstrate the government's intent to contract with plaintiff. *Id.*; *see also* Am. Compl. ¶ 54 at 19–20. Plaintiff further argues that "mov[ing] forward with the purchase and renovation of the Hotel [and] making it clear to Ms. Fierstein, its lender, and others that it was undertaking those efforts in furtherance of satisfying the Nellis AFB requirements needed to obtain the MOU" reflects plaintiff's intent to enter into the MOU with the government. *Id.*

The court agrees with the government that plaintiff's allegations are not sufficient to establish a claim based on an implied-in-fact contract. Even if every fact alleged by plaintiff could be proven, based on the facts alleged, plaintiff cannot prevail on its

17

implied-in-fact contract claim that it was guaranteed an MOU before it owned a hotel or passed all of the necessary government inspections.[6] The sample MOU stated that "[p]rior to this [MOU] being approved, a team comprised of, at a minimum, Lodging, Fire Protection, Office of Special Investigations (OSI), and Environmental Health personnel [would] inspect the facility." *Id.* ¶ 17 at 7. In view of this language, Nellis Lodging could not commit to entering into an MOU with plaintiff when plaintiff met with Ms. Fierstein at Nellis Lodging before it purchased a hotel. To the contrary, the sample MOU makes plain that Nellis Lodging could only be contractually bound by a written agreement, i.e., the MOU, after the MOU requirements had been met *and* an inspection had confirmed that the hotel met Nellis Lodging's standards. This court has recognized that "in negotiations where the parties contemplate that their contractual relationship would arise by means of a written agreement, no contract can be implied." *Pac. Gas*, 3 Cl. Ct. at 339. *See also Essen Mall Props. v. United States*, 21 Cl. Ct. 430, 439–40 (1990); *City of Klawock v. United States*, 2 Cl. Ct. 580, 585 (1983), *aff'd,* 732 F.2d 168 (Fed. Cir. 1984). As the Federal Circuit has explained, agency actions "do not produce a contract implied-in-fact until all steps have been taken that the agency procedure requires; until then, there is no intent to be bound." *New Am. Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1080 (Fed. Cir. 1989).

---

[6] At oral argument, plaintiff conceded that the MOU did not guarantee any specific amount of off-base lodging business, but rather obligated the hotel to accept and provide such lodging at agreed upon rates when such lodging was requested by Nellis Lodging. *See* Oral Argument at 11:29:06 a.m.–11:29:28 a.m. (May 15, 2018).

In this connection, plaintiff's reliance on Ms. Fierstein's statements to suggest that the parties had entered into an agreement to enter into an MOU if plaintiff met the MOU requirements is misplaced.  First, even plaintiff concedes that Ms. Fierstein's statements were conditioned on plaintiff meeting the MOU requirements.  If acceptance of an offer "is in any respect conditional" or if it "reserves to the party giving it a power of withdrawal[,]" those representations and promises cannot be interpreted as binding on the United States.  *Uniq Computer Corp. for Benefit of U.S. Leasing Corp. v. United States*, 20 Cl. Ct. 222, 230 (1990) (quoting Corbin, *Corbin on Contracts, A Comprehensive Treatise on the Working Rules of Contract Law* § 264 (1963)).  Ms. Fierstein's statements to plaintiff, together with the delivery of the sample MOU, are therefore insufficient to create a binding contract because "[a] mere statement of intention . . . is not enough to manifest an unambiguous acceptance of an offer, especially when coupled with a condition precedent."  *Essen Mall*, 21 Cl. Ct. at 440.  Thus, Ms. Fierstein's statements and actions, even if true, do not evince the government's unambiguous acceptance of an offer or an intent to be contractually bound.  "A court will not . . . imply an agreement between parties when there was none, nor can a court imply privity when there was no meeting of the minds between the particular parties."  *Carter v. United States*, 98 Fed. Cl. 632, 636 (2011).

Indeed, the Federal Circuit has noted that "it is irrelevant if the oral assurances emanate from the very official who will have authority at the proper time[] to sign the contract or grant," because if the assurances are premature and "an approving official exceeds his authority, the government can disavow the official's words and is not bound

19

by an implied contract." *New Am. Shipbuilders*, 871 F.2d at 1080 (citing *Empresas Electronicas Walser Inc. v. United States*, 650 F.2d 286, 223 Ct. Cl. 686, 688, *cert. denied,* 449 U.S. 953 (1980)).  Regardless of whether Ms. Fierstein had the authority to sign the MOU on behalf of Nellis Lodging, she did not have the authority to bind Nellis Lodging in contract before the conditions of the MOU were met and thus could not have contracted to guarantee that plaintiff would receive an MOU before purchasing and renovating a hotel as the plaintiff claims.  At best, plaintiff was in negotiations for an agreement but had not reached an agreement.  The court must therefore dismiss plaintiff's breach of an implied-in-fact contract claim for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons set forth above, the government's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and for failure to state a claim under RCFC 12(b)(6) is **GRANTED.**

The clerk is directed to enter judgment accordingly.  No costs.

   **IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge
